# CHARLESTON.

CHAPMAN *et al. v.* CHARTER *et al.*

Submitted February 4, 1899—Decided November 11, 1899.

1. DEED—*Property Conveyed.*

A deed made in the following form: "This deed made and en-
tered into this first day of March, 1894, by and between A. C.
and W. A. C., her husband, of the first part, and C. A. C. and
L. R. C., all of the county of D., and State of West Virgin-
ia, witnesseth, that for and in consideration of the sum of $500
* * * the parties of the first part have sold and doth hereby
convey unto the parties of the second part a certain tract of land
[describing it]. And the parties of the first part hereby cov-
enant that they will warrant generally the property hereby con-
veyed, retaining a vendors's lien to secure the payment of the
residue of the purchase money. Witness the following signatures
and seals. A. C. [Seal.] W. A. C. [Seal.],"—duly acknowl-
edged, conveys all the right, title, and interest of W. A. C., the
husband, in and to the described property, whether the legal
title was in him or in A. C., the wife. (p. 778).

2. DEED—"*Conveys*" "*Grants.*"
   The word "convey;" as used by "the parties of the first part" in said deed, is equivalent in effect to the word "grant," suggested in section 1, chapter 72, Code. (p 778).

3. DEMURRER TO EVIDENCE
   A case in which it was not error to require plaintiffs to join in demurrer of defendants to the evidence. (p. 780).

Error to Circuit Court, Doddridge County

Action by Lloyd W. Chapman and another against Lathrop R. Charter and others. Judgment for defendants, and plaintiffs bring error.

*Affirmed.*

G. W. FARR and L. W. CHAPMAN, for plaintiffs in error.

J. V. BLAIR, M. H. WILLIS, JOHN BASSEL, MILLARD F. SNIDER and EDWARD MCSWEENEY, for defendants in error.

MCWHORTER, JUDGE:

This is a writ of error by plaintiffs, Lloyd W. Chapman and George J. Cottrill, to a judgment rendered in an action of ejectment brought by them in the circuit court of Doddridge County, at the March term, 1898, in favor of the defendants, Lathrop R. Charter, Emory Myers, and D. H. Anderson, on demurrer to the evidence of the plaintiffs. The action was for a tract of seventy-one acres of land in the county of Doddridge, described by metes and bounds in the declaration and deeds offered in evidence. Defendants appeared and entered their plea of not guilty, upon which issue was joined, and upon the 26th day of March, 1898, a jury was duly impaneled and sworn. Plaintiffs introduced as a witness George Fox, who testified; That he was acquainted with the parties to the suit, and was asked if he ever had a conversation with C. A. Charter in regard to the land in controversy, and what he said about it. He answered: "C. A. Charter told me he bought the land of Mrs. Cottrill, and gave $500 for it. He said the royalty was sold on it when he bought it, but he didn't think it would amount to anything. I asked him what he bought the land for, and he said he thought he would put up a slaughter house

on it." That such conversation was in 1894, either in June or July. And therefore defendants insisted that said evidence was inadmissible in law upon the issue, and moved the court to exclude it from the jury, and the court sustained said motion, and the plaintiffs excepted to such ruling, which exception was saved to them by bill of exceptions. It was admitted by defendants that J. D. McReynolds had the full and complete title, derived from patent or grant from the commonwealth of Virginia, and various intermediate conveyances from and under the patentee or grantee of the commonwealth, and that he had such title prior to and on the 22d day of October, 1888, to the land in controversy. Plaintiffs then introduced a deed dated on the 22d day of October, 1888, duly executed and acknowledged on the 23d day of October, 1888, by J. D. McReynolds and Mary M., his wife, whereby they conveyed the said tract of 71 acres of land to William A. Cottrill, with covenants of general warranty, retaining their vendor's lien for a residue of purchase money thereon, which deed was admitted to record in the clerk's office of Do'ddridge County on the 6th day of December, 1896, and had the following indorsements thereon: "This said deed was handed back to me in the fall of 1892 by consent of W. A. Cottrill and wife, and a new deed made to Arminta Cottrill, the wife of W. A. Cottrill. (Signed) J. D. McReynolds, Kenton, W. Va., Nov. 8., 1896." Also: "Deed recalled, cancelled, and made to Arminta Cottrill, wife of W. A. Cottrill, in the fall of 1892. (Signed) J. D. McReynolds." Plaintiffs also introduced a deed executed by W. A. Cottrill and Arminta Cottrill, his wife, to L. W. Chapman and George J. Cottrill, dated January 25, 1896, and recorded on the same day, whereby, in consideration of one dollar in hand paid, "and further consideration not here set forth," the said W. A. Cottrill and wife granted, with special warranty, the said tract of seventy-one acres of land to said L. W. Chapman and George J. Cottrill. Plaintiffs also offered in evidence a statement in writing under seal, made, executed, and acknowledged by J. D. McReynolds and Mary M. McReynolds, his wife, dated the 9th day of February, 1893, and sworn to by J. D. McReynolds, and recorded on said 9th day of February, 1893, which statement was to the effect that prior to

April 22, 1891, to wit, on the 1st day of November, 1889, the said McReynolds and wife did make, execute, acknowledge, and deliver to W. A. Cottrill a good and lawful deed, with general warranty, of a certain tract of land, containing about seventy-one acres, stating the district in Doddridge county where the same was situate, and giving names of adjoining owners; that they had retained a vendor's lien to secure the deferred payments of $303.75; that afterwards, on or about the 12th day of October, 1892, in said county, said Cottrill returned to them with said deed, it not having been recorded, and requested that they execute another deed for the same land to his wife, Arminta Cottrill, and saying that he would destroy the first named deed, and they did then and there execute and deliver to the said Arminta Cottrill a deed for said land in consideration of two hundred dollars in hand paid and the deferred amount of one hundred and fifty-three  dollars and seventy-five  cents, for the payment of which they retained a vendor's lien, and referred to said deed of October 12, 1892, for a more definite description of said land, and stating that "the deed first above mentioned was destroyed." To the introduction of which statement defendants objected, which objection was overruled, and defendants excepted. Plaintiffs also introduced in evidence a copy of sale or lease executed by W. A. Cottrill to . A. H. Low, dated the 22d day of April, 1891, which was duly acknowledged by Cottrill and Low, and recorded April 23, 1891, by which lease or sale, in consideration of fourteen dollars and twenty-one cents, Cottrill granted and conveyed to said Low, subject to the conditions set forth in the paper, all  the oil and gas in and under the said seventy-one acres. said grant subject to any rights existing to the lessee by virtue of the lease theretofore given on said oil and gas; but if said lease had expired or become void, or if no such lease ever existed, said grantee should have, and was thereby granted, all the rights and privileges of drilling and operating on said land, to produce, store, and remove said oil and gas, necessary and usually granted to the lessee in an oil and gas lease.  The grant and conveyance were made on condition that lessee should, within 90 days after a well should be drilled on said land to the usual depth for oil and gas, and properly tubed and tested for oil, pay to the grant-

or the sum of three hundred and fifty-five dollars, and if
said grantee should, as he might do at his option, omit to
pay the three hundred and fifty-five dollars within the time,
then the grant should be absolutely void, as though it had
never been made, and the grantor should retain the fourteen
dollars and twenty-one cents as liquidated damages, and
depositing the $355 to the credit of grantor in a bank at
Clarksburg should be equivalent to payment to and accept-
ance by grantor; and it was agreed that in case the lease re-
mained in force, and grantee paid the three hundred and
fifty-five dollars, he should thereafter be entitled to all the
money and royalty arising therefrom, but not before the
money was paid. Said grant was to expire ten years from
its date if no well should be drilled by that time on said
land, unless said sum of three hundred and fifty-five dol-
lars was paid without the well being drilled. Said grant,
and its conditions, terms, and provisions, should apply and
extend to the grantor and grantee, their heirs, executors, ad-
ministrators, and assigns. To the introduction of which de-
fendants objected. The objection was overruled, and de-
fendants excepted. Plaintiffs offered in evidence a record-
ed lease executed by L. R. Charter and wife to E. Myers,
dated June 18, 1896, of the said tract of seventy-one acres,
for the sole and only purpose of drilling and operating for
oil and gas, etc., the lessor to have one-eighth of the oil as
royalty. Also, an agreement between E. Myers and D. H.
Anderson, whereby said Myers assigned all his right, title,
and interest in said lease to said Anderson. Also, a written
notice given by plaintiffs to L. R. Charter and C. A. Charter,
dated January 27, 1896, notifying them that plaintiffs had
purchased said land under said deed of January 25, 1896;
that they were informed that said Charters claimed to be
the owners thereof by purchase from Arminta Cottrill; and
that they were trying to dispose of that said supposed title
by sale, lease, or otherwise,—and notifying them
not to attempt to dispose of said pretended title, be-
cause said Arminta had no title when they pretended to pur-
chase the said land, which notice was on record, and dated
February 9, 1893, which showed that a deed for said land
was made to W. A. Cottrill on November, 1, 1889, by J. D.
McReynolds, the owner thereof, and same had not been

reconveyed by Cottrill to McReynolds, and therefore legal title was in said Cottrill, which notice was served on L. R. Charter and C. A. Charter the day of its date. To the introduction of which notice the defendants objected, the objection was overruled, the notice introduced, and defendants excepted. Also, the declaration in the case, and service of notice of its filing were introduced by plaintiffs and read to the jury. Plaintiffs demanded of defendants an original contract between L. R. Charter and E. Myers, which is produced and copied into the evidence in the case. It is dated June 18, 1896, and is an agreement on the part of E. Myers, lessee of L. R. Charter, of the seventy-one acres of land, not to hold or attempt to hold L. R. Charter, the lessor, responsible to him for any damages or costs he might sustain by reason of any claim of any party or parties claiming title to an interest in said land. They also were permitted, over the objection and exception of the defendants, to introduce a certificate of Lee Haymond, cashier of the Merchants' National Bank of West Virginia, at Clarksburg, to the effect that A. H. Low, for himself and his assigns, had on the 9th day of March, 1896, deposited in said bank to the credit of L. R. Charter the sum of three hundred and fifty-five dollars, as the final amount allowed to be paid by the grantee in that certain grant of the oil and gas in the seventy-one acres of land (referring to the said instrument in writing made by W. A. Cottrill to said Low, dated April 22, 1891); the interest of said Cottrill to the land having since become vested in said L. R. Charter, subject to the rights of said Low and his assigns. Oral testimony was also introduced showing the possession of W. A. Cottrill under the deed of October 22, 1888, and George J. Cottrill testified: That he took possession under the deed of January 25, 1896, from W. A. Cottrill and Arminta Cottrill to plaintiffs. That defendants got possession of the land and locked up the house. That he went there and could not get in, and they would not let him in, and he had a lot of stuff therein. That Myers came over to survey and run out the line, and witness notified them that it was his land, and to get off, when Myers said, "Let us put down a well, and have the contest over the oil." Witness replied that he would not do it. "They went on and made their location, and got their rig cut, and

I went over, and they were drawing lumber, or fixing to; and I went and stood on the lines, and said, the first man that started the horses, I would shoot him, and they unhitched their horses and took them away. That was in June. I came home that night, and that night they run their lumber in and put up their rig." Other oral testimony was taken, but I deem it unnecessary to notice it here.

The defendants offered in evidence a deed dated the 12th day of October, 1892, from J. D. McReynolds and wife to Arminta Cottrill, duly acknowledged on that day, and recorded on the 13th day of October, 1892, purporting to convey, with general warranty, said tract of 71 acres of land to Arminta Cottrill. Also, a deed dated March 1, 1894, from Arminta Cottrill and W. A. Cottrill, her husband, to C. A. Charter and L. R. Charter, which deed was acknowledged on the 5th day of March, 1894, and duly recorded on the 6th day of the same month, and in consideration of $500, of which two hundred and fifty dollars was paid, and a vendor's lien reserved for the residue, conveyed, with general warranty, the said tract of land to said C. A. and L. R. Charter. Also, a deed dated January 27, 1896, from C. A. Charter and Henrietta Charter, his wife, to L. R. Charter, admitted to record January 28, 1896, whereby, in consideration of one hundred dollars cash, and the surrender by L. R. Charter to C. A. Charter of his note for one hundred and twenty-five dollars made March 1, 1894, and the assumption by L. R. Charter of the payment of all the purchase money remaining unpaid, said C. A. Charter and wife conveyed all their right, title, and interest in the undivided one-half of said tract of land, with special warranty. Also, a contract in writing dated March 1, 1894, between Arminta Cottrill and W. A. Cottrill and L. R. Charter and C. A. Charter, whereby the said Cottrill agreed to sell the said tract of seventy-one acres of land to said Charters in consideration of five hundred dollars, two hundred and fifty dollars of which was paid; the residue to be paid in two equal payments of one hundred and twenty-five dollars at one and two years; said Cottrills to make a good and sufficient deed within ten days from that date, and to give possession of the property on or before April 10, 1894. The wheat then sown on the land was reserved by the Cottrills, and they

were to take good care of the property until possession was given. To the introduction of each of said papers as evidence by the defendants the plaintiffs objected, which said several objections were overruled, and the papers permitted to be read, to which the plaintiffs excepted. And the defendants demurred to the plaintiffs' evidence, and the court required the plaintiffs to join therein, which they did, to which ruling of the court compelling them to join in the said demurrer plaintiffs excepted, when the jury returned a verdict for the plaintiffs for the seventy-one acres of land, describing it by metes and bounds as set out in the declaration and verdict, and one dollar damages for the unlawful withholding possession of said lands by defendants, subject to the law arising upon the demurrer of defendants to the evidence of the plaintiffs; and, if the law be for the defendants, then their verdict was for the defendants. The plaintiffs moved the court to set aside the verdict, which motion the court overruled, and sustained the demurrer of defendants, and rendered judgment for the defendants for their costs, to all of which rulings of the court plaintiffs excepted, and obtained a writ of error from this Court, and assign the following errors: (1) In rejecting the evidence of George Fox. (2) In allowing the defendants to file as evidence the deed from J. D. McReynolds to Arminta Cottrill; the deed from Arminta Cottrill and W. A. Cottrill, her husband, to C. A. Charter and L. R. Charter; the deed from C. A. Charter to L. R. Charter; and the so-called contract of Arminta Cottrill and W. A. Cottrill to the Charters. (3) In compelling plaintiffs to join in defendants' demurrer to plaintiffs' evidence. (4) In finding for the defendants on the demurrer, and in dismissing plaintiffs' case at their costs, and in rendering judgment on the verdict for the defendants. (5) In not entering judgment for the plaintiffs on the demurrer, and in not setting aside the verdict of the jury.

It is not disputed that the complete title up to the 22d day of October, 1888, in the land was vested in J. D. McReynolds, and both parties claim through and under him. It seems to me the only real question involved in this case is whether the deed from Arminta Cottrill and W. A. Cottrill of March 1, 1894, to C. A. Charter and L. R. Charter devested

the said W. A. Cottrill of the title vested in him by the deed
from McReynolds of October, 22, 1888, and vested the title
in C. A. Charter and L. R. Charter. If that conveyance was
good, there was nothing left in W. A. Cottrill to convey, and
the plaintiffs took nothing by their deed from W. A. Cottrill
and wife of. January 25, 1896. McReynolds, by his deed to
W. A. Cottrill of October 22, 1888, conveyed his whole title.
The deed was delivered, and the grantee placed in possession
of the property thereunder. Cottrill's returning the deed to
McReynolds after its delivery, with the request to convey
the property to Arminta, did not reinvest the title in Mc-
Reynolds so far as to enable him to convey the title again to
another. Even the destruction of the deed by the consent of
both parties would not devest Cottrill of the title. See
*Furguson* v. *Bond*, 39 W. Va. 561, (20 S. E. 591) (Syl., point
6). Cottrill never reconveyed to McReynolds. Therefore the
deed of October 12, 1892, from McReynolds to Arminta Cot-
trill vested no title in her, and the same remained vested in
W. A. Cotrill, who probably supposed it was vested in Ar-
minta, his wife; and they sold the property to the Charters,
and, judging from the considerations mentioned in the vari-
ous deeds, they were selling it for about what it was reason-
ably worth at the time; and there can be no question that
the intention of both W. A. Cottrill and Arminta Cottrill
was to convey the complete title, legal and equitable, to the
said Charters as fully as it was vested in them or either, of
them, while it is certain that the Charters supposed they
were receiving such title by the conveyance.

It is contended with much earnestness and apparent
confidence by appellants that, the deed to Arminta from J.
D. McReynolds and wife being a nullity, therefore the join-
der by the husband in the deed to the Charters was a nul-
lity. Cottrill and wife were doubtless selling in good faith
for a consideration representing at the time the full and fair
value of the property conveyed. In *McCullouch* v. *Dashiell*,
78 Va. 634, it is held that "the operation of deeds is a ques-
tion of intention, and will not be carried further than the
parties appear, from the tenor of the whole instrument, to
have agreed; and the doctrine of estoppel is no exception to
this general principle."

Appellants insist that, because W. A. Cottrill is men-

tioned in the deed as the husband of Arminta Cottrill, he conveyed nothing but his marital rights. The deed is as follows: "This deed, made and entered into this first day of March, 1894, by and between Arminta Cottrill and W. A. Cottrill, her husband, of the first part, and C. A. Charter and L. R. Charter, all of the county of Doddridge, and state of West Virginia, witnesseth, that for and in consideration," etc., "the parties of the first part have sold and do hereby convey unto the parties of the second part a certain tract of land (describing it), and the parties of the first part covenant that they will warrant generally the property hereby conveyed, retaining a vendor's lein to secure the payment of the residue of the purchase money. Witness the following signatures and seals. Arminta Cottrill. (Seal.) W. A. Cottrill. (Seal.)" In this deed Cottrill and his wife are named as "parties of the first part," and the deed recites that "the parties of the first part have sold and doth hereby convey" the said tract of land, "and the parties of the first part covenant that they will warrant generally the property hereby conveyed, retaining a vendor's lien to secure the payment of the residue of the purchase money"; and, as is said by appellees, "both are grantors, both convey, both covenant, and both warrant." We find in this conveyance no exception,—no limitation as to the title conveyed. Section 1, chapter 72, Code, prescribes, or rather suggests, a general form of a deed which conveys the grantor's whole interest; and the deed under consideration is precisely in such form, with the single exception of the word "convey" in the deed in place of the word "grant" in said form, and which section provides that "a deed may be made in the following form, or to the same effect." Section 2 provides, "Every such deed conveying lands shall, unless an exception be made therein, be construed to include all the estate, right, title and interest whatever, both at law and in equity, of the grantor, in or to such lands." In the absence of any exception made in said deed by W. A. Cottrill, it must be construed to have conveyed to the Charters all the estate, right, title, and interest whatever, both at law and in equity, of the said Cottrill. In *O'Brien* v. *Brice*, 21 W. Va. 704, JUDGE SNYDER in delivering the opinion of the court, at page 707, says: "The granting clause, which is the controll-

ing and operative part of every deed, conveys the land absolutely, without any limitation or qualification whatever; and, if the grantor had intended to grant her dower right only, the granting clause would have been the proper, if not the only, part of the deed where she could have expressed that intention. Descriptive words in the premises usually can have no other effect than to designate the parties, and will not be construed as limitations of the estate conveyed." And in *Railroad Co.* v. *Whitham*, 155 Ill. 514 (Syl., point 1) 40 N. E. 1014, L. R. A. 612: "The fact that the name of the wife is placed after that of her husband, in naming the party of the first part to a deed in which she appears as one of the parties conveying and quitclaiming all interest in the land, is not sufficient to restrict the conveyance by her to a mere waiver of dower." It is contended that section 1, chapter 72, Code, provides that a deed shall use the words "do grant," etc., and that in the deed under discussion the words do not denote a present grant, and are absolutely ineffectual to pass the legal title to the land; citing *Weinrich* v. *Wolf*, 24 W. Va. 299. That case is very different from this, as will very readily be seen by reference to the syllabus (point 1), there being really no granting clause. In *Edelman* v. *Yeakel*, 27 Pa. St. 27, Judge Black says: "The word 'convey' means to transfer title from one person to another;" giving the same legal effect to the word "convey" as "grant," which has "become a generic term applicable to the transfer of all classes of real property." 3 Washb. Real Prop. 163. In *Field* v. *Columbus*, 4 Sawy. 527 Fed. Cas. No. 4,764, Judge Field says: "Any words in a deed indicating an intention to transfer the estate, interest, or claims of the grantor will be a sufficient conveyance, whether they be such as were generally used in a deed of feoffment, bargain and sale, or of release, irrespective of the fact of possession of the grantor or grantee, or of the statute of uses." Chancellor Kent says (4 Kent's Comm. 492), "As other modes of conveyance operate equally as grants, any words showing the intention of the parties would be sufficient." In *Lambert* v. *Smith*, 9 Or. 185, it is held: "The use of the word 'convey' in a deed is equivalent to a grant at common law, and passes the title, and is, in meaning and effect, sufficient to answer the requisites of a grant at common law. A deed containing the

words 'bargain, sell, and convey' is operative as a grant."

The deed of March 1, 1894, to the Charters conveyed all the right, title, and interest of W. A. Cottrill in and to the tract of land in controversy, and nothing remained for him to convey thereafter; and plaintiffs took nothing by their deed from Cottrill and his wife, made nearly two years after they had devested themselves of all title. And, as to the conveyance to Low of the oil and gas by W. A. Cottrill, that is a question which could not be raised by plaintiffs, as they were not claiming anything under Low; and, taking nothing by their deed from Cottrill of January 25, 1896, they have no interest in the land. The court did not err in compelling plaintiffs to join in the demurrer. *Mabel* v. *John*, 42 W. Va. 30, (24 S. E. 608,) 32 L. R. A. 800 (Syl., point 3): "Plaintiff or defendant may demur to the evidence, and the demurrer must set out the whole evidence; and the court, unless it be plainly against the demurrant, and appears to be resorted to only for delay, should compel the other party to join in the demurrer without requiring the demurrant to make on the record any admission of inferences of fact. But it is for the court to decide all inferences fairly deducible from the evidence demurred to." The judgment will be affirmed, with costs and damages to the appellees.

BRANNON, JUDGE:

As the deed contains the words "sold" and "conveyed," I regard it a deed of bargain and sale, good under the statute of uses, not dependent on the word "grant." Deeds of bargain and sale are still good as before the form given in the Code.

*Affirmed.*