# CHARLESTON.

R. R. LOCKHART *et al.* v. UNITED FUEL GAS COMPANY *et al.*

(No. 6011)

Submitted January 24, 1928.   Decided January 31, 1928.

MINES AND MINERALS—*Deed Conveying Undivided Sixteenth Interest in Oil and Half Interest in Gas Royalty Held to Convey One-Half of One-eighth of Oil Reserved as Royalty and One-half Gas Rentals Under Lease Existing or Thereafter Executed.*

A deed from F. and wife to S. and L. contained this provision: "The said party of the first part grants unto the said party of the second part a one undivided sixteenth interest in and to all the oil in and under that certain tract of land hereinafter described, as well as the one undivided half interest in and to the royalty reserved, or to be reserved, in any gas well that may be drilled on said tract of land. It being the true intention of the grantor herein to convey to the said party of the second part the one-half of the one-eighth of the oil reserved, or to be reserved, in any oil or gas lease that has been executed, and which may be executed on said tract of land, as well as the undivided half interest into the royalty reserved, or to be reserved in any such lease, for each and every gas well to be drilled on said tract." *Held,* to convey such interest in both the oil and the gas under the said premises described in said deed as would give the grantees together an equal one-half of the one-eighth of the oil

reserved as royalty, and one-half of the gas rentals, under the then existing lease or any thereafter executed on said land, which, in effect, conveys a one-half undivided interest in the oil and gas in place.

(Mines and Minerals, 40 C. J. § 752.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Clay County.

Suit by R. R. Lockhart and others against the United Fuel Gas Company and others to quiet title. From a ruling sustaining a demurrer to the bill of complaint, plaintiffs appeal.

*Affirmed.*

*J. E. Springston,* for appellants.

*E. Hilton Jackson, H. D. Rummel* and *Eakle & Eakle,* for appellees.

Woods, Judge:

G. W. Fitzwater was the owner at one time of a tract of 83 acres in fee in Clay county. In 1900 he executed a lease for the oil and gas on said tract to O. D. Harrington upon the consideration that he was to receive one-eighth of the oil extracted and $50.00 per annum for each producing gas well. On the 14th day of February, 1901, he and his wife executed a writing, which, aside from the recital of consideration, description of the premises, etc., is as follows:

> "THIS DEED made this 14 day of Feby., 1901, by and between George W. Fitzwater and M. J. Fitzwater, his wife, party of the first part, and Jno. W. Leonard & P. M. Summers, party of the second part, witnesseth:
> " * * * the said party of the first part grants unto the said party of the second part a one undivided sixteenth interest in and to all the oil in and under that certain tract of land hereinafter described, as well as the one undivided half interest in and to the royalty reserved, or to be reserved, in any gas well that may be drilled on said tract of land. It being the true intention of the grantor herein to convey to the said party of the second

part the one-half of the one-eighth of the oil re-
served, or to be reserved, in any oil or gas lease
that has been executed, and which may be executed
on said tract of land, as well as the undivided half
interest in to the royalty reserved, or to be re-
served in any such lease, for each and every gas
well to be drilled on said tract.' * * * The party
of the first part will warrant generally the prop-
erty hereby conveyed.

"Witness the following signatures and seals,"
etc.

This writing was placed on record in Clay county on the
15th day of February, 1901. The clerk in making the record
omitted therefrom the words, "and which may be executed",
appearing in the above recital. Three years later G. W. Fitz-
water executed a deed to John W. Fitzwater purporting to
convey the entire estate in 72 acres of the 83-acre tract. In
1906 John W. Fitzwater granted to Hansford Reed all the
oil and gas on the 72 acres. A lease was executed by the
heirs of Hansford Reed, deceased, to the United Fuel Gas
Company, dated May 22, 1915. In 1926 the writing from
G. W. Fitzwater to Leonard and Summers was again recorded.

Suit was brought by three of the heirs of Hansford Reed
and parties claiming under a fourth to have cancelled, as a
cloud on their title, the writing to Leonard and Summers.
The wife and children, heirs at law of Leonard, together with
Summers, J. B. Lohan, D. R. Carnes and L. E. Carnes (the
latter two also having a claim under plaintiffs) were made
defendants. The United Fuel Gas Company, South Penn Oil
Company and the Eureka Pipe Line Company, while being
joined as defendants, are only nominal parties to the suit.
A demurrer to the bill was interposed, and the chancellor
sustained the demurrer. From this ruling the plaintiffs
appeal.

Both plaintiffs and defendants agree that the whole case
hinges on the writing from Geo. W. Fitzwater and wife to
John W. Leonard and P. M. Summers. It is the contention
of the plaintiffs that Summers and Leonard acquired no in-
terest by said writing in either the oil or gas in place; that it

created but a personal obligation on the part of the grantors therein to deliver to Summers and Leonard one-sixteenth of the oil produced from said tract of land and one-half of any gas well rentals arising therefrom; and that it is not a covenant running with the land binding on the successors in title of G. W. Fitzwater. On the other hand, the defendants maintain that the said writing granted in effect one-half interest in the oil and gas in place. Thus the issue is sharply drawn.

It may be noted that the writing is in the form of the ordinary deed. The parties to the same designated it a deed. The word "grant", a generic term applicable to all transfers of real property, is used. We have held that deeds generally require the word "grant" or some technical words suitable to the character of the conveyance. *Uhl* v. *Ohio River Railroad Co.*, 51 W. Va. 113. The expression that "the party of the first part will warrant generally the property hereby conveyed" is peculiar to transfers only of real estate. It extends to no lease for years, or to any other chattel. 2 Minor, Real Prop. 1205. "Convey" is another word used in the granting clause. This means to transfer the title of land from one class of people to another. *Chapman* v. *Charter*, 46 W. Va. 779. The presumption is that the grantor knew and used all these words employed in their technical legal sense, unless it appears from other parts of the instrument or from the circumstances of the case that they were intended to have a different meaning. *Irvin* v. *Stover*, 67 W. Va. 356. With these principles fixed in our mind, let us examine the granting clause.

In this clause there is expressly granted "one undivided sixteenth interest in and to all the oil in and under" said tract of land. Standing alone it seems plain that the grantors conveyed one-sixteenth of the oil in place. This is followed with a grant of "an undivided half interest in and to the royalty reserved, or to be reserved in any gas well that may be drilled in said tract of land". Thus we have granted, so far, one-sixteenth of the oil and one-half of the gas each in place—a part of the realty. Not content, however, the

grantors explained the grant as follows: "It being the true intention of the grantor herein to convey to the said party of the second part the one-half of the one-eighth of the oil reserved, or to be reserved, in any oil or gas lease that has been executed, and which may be executed on said tract of land, as well as the undivided half interest in to the royalty reserved, or to be reserved in any such lease, for each and every gas well to be drilled on said tract." Construing these words in the light of the fact that there existed on said premises a lease for oil and gas, providing royalties to the grantors for the use of the land, one-eighth of the oil delivered in the pipe-line and $50.00 for each gas well drilled on the premises, it is plain by this interpretive clause that the grantees were to have one-half of the one-eighth (royalty) oil and one-half of the gas rentals, not only under the existing lease, but under *any lease thereafter to be executed.* In the case of *Paxton* v. *Benedum-Trees Oil Co.*, 80 W. Va. 187, the deed in controversy is very similar to the deed in the instant case. The granting clause in that deed provided: "Do grant and convey unto the parties of second part the one-sixteenth of all the oil and one-half of all the gas" in the tracts described, and "including in this conveyance the one-half of all the royalties, incomes and rentals that may hereafter arise therefrom * * * by virtue of any oil and gas lease, or leases, now on said several tracts of land or which may hereafter be placed on said several tracts of land or any of them." In this case the word "royalty" is used. In the instant case it refers to the "one half of the one eighth of the oil reserved" to the grantors, which is plainly an expression synonymous with royalty. The Court in construing the provision in the *Paxton* case, said: "We are clearly of the opinion that the grant of one-half of the royalties, rents and income from the oil is a grant of one-half of the oil in place". This holding is based on the old and well settled construction of words employed in wills and deeds that a devise or grant of the profits of land passes the land itself. Coke Litt. 4; *Parker* v. *Plummer,* Cro. Eliz. 190; *Paramour* v. *Yardley,* Plowd. 541; *Reed* v. *Reed,* 9 Mass. 373; *Drusadow* v. *Wilde,* 63 Pa. 170. Our own decisions are in entire accord with

these authorities. *Snodgrass* v. *Koen,* 82 W. Va. 337; *Updegraff* v. *Coal Land Co.,* 74 W. Va. 316; *Toothman* v. *Courtney,* 62 W. Va. 175. The Court adverted to the fact in the *Paxton* case that there was in the same paragraph of the deed a grant of one-sixteenth of the oil, and also one-half of the oil. How like the instant case, where we have a grant of one-sixteenth of the oil in place, followed by a recital that it is the intention of the grantor to grant one-half of the royalties! Admitting that these provisions are inconsistent, to which shall effect be given? There is a well recognized canon to be observed in the construction of deeds that, where it admits of two constructions, it will be construed most strongly against the grantor and most favorably to the grantee. 13 Cyc. 609; *Griffin* v. *Coal Co.,* 59 W. Va. 483; 2 Devlin on Real Estate, §848; *Lumber Co.* v. *Sheets,* 75 W. Va. 21. But, if the latter clause is not a different grant, but merely interpretive of the first, what is the effect? The rule is that an explanatory or *habendum* clause in a deed may lessen, enlarge, explain, or qualify, but not totally contradict or be repugnant to, the estate granted in the premises. In cases of irreconcilable repugnancy, the premises generally prevail for the *habendum* cannot divest an estate already vested in the premises. *McDougal* v. *Musgrave,* 46 W. Va. 509; 2 Bl. Comm. 298; 2 Min. Inst. 629; 2 Min. Real Prop. §1110. Hence an estate in fee in land plainly granted as here cannot be destroyed by an explanatory clause converting it into a personal obligation of the grantor as claimed by the plaintiffs' counsel in his briefs, though, as we have seen, such explanatory clause as is permissible under the rule enlarges the original grant of an undivided one-sixteenth interest in the oil in the premises to a grant of one-half of the oil and gas royalties therein—in effect a grant of one-half of the oil and gas in place. So, from either viewpoint, in the light of the authorities, we must hold that the deed under construction meant to convey such an interest in both the oil and gas as would give the grantees together an equal one-half of the royalty oil and one-half of the gas rentals, which, in effect, conveys a one-half undivided interest in the oil and gas in place.

The plaintiffs further contend that they are bound by the Leonard and Summers deed only as originally recorded. In this first recordation the clerk inadvertently omitted from the record the words "and which may be executed". Does such omission materially change the effect of the deed and the interest conveyed? There is left in the granting clause the words "or to be reserved", thus indicating clearly that the parties to the instrument recognized that other leases might be thereafter executed. Then it would seem that, as regards constructive notice, the deed as recorded is sufficient. The record shows that Hansford Reed and wife (under whom the plaintiffs claim), in a lease to Summers in 1907, was careful to except from its operation "any royalty or interest in said oil that may have been heretofore sold, reserved, or conveyed by said lessor or their predecessors in title". If J. W. Fitzwater or Hansford Reed knew of the existence of the Summers-Leonard deed at the time they acquired their deeds, then it is immaterial whether the former deed was or was not of record. This bill makes no averment to the contrary. *Abney v. Lumber Company,* 45 W. Va. 446; *Cain v. Cox,* 23 W. Va. 594; *Doswell v. Buchanan,* 3 Leigh. 365. Neither is there a sufficient allegation in the bill that the said parties were purchasers for a valuable consideration before they had notice of the existence of said deed. True, a copy of the deed, made a part of the bill as an exhibit, recites a consideration. "Such recital is not sufficient", says Perry on Trusts, §219, "there must be actual payment." The bill must contain a specific allegation to that effect. The absence of such averments alone makes the bill demurrable.

The conclusions at which we have arrived on the questions already considered, render other assignments of error entirely immaterial, and dispenses with the necessity of any consideration of them upon this appeal.

*Affirmed.*