# CHARLESTON.

## CLARK *v.* BEARD.

Submitted March 8, 1910.    Decided May 2, 1911.

1. TENANCY IN COMMON—*Adverse Possession.*
    Adverse possession between co-tenants.  Some principles re-
    stated.  (p. 315).

2. FRAUDS—STATUTE OF—*Conveyance of Title to Land—Parol Dis-
    claimer.*
    Vested title in land cannot be devested by mere parol disclaim-
    er.  The following writing does not do so: "This receipt is to
    show I have no interest in the 350 acres that Preston sold to
    Cherry River Company.  This the 20 day of January, 1900.  S.
    H. Clark."  (p. 318).

3. APPEAL AND ERROR—*Review—Weight of Evidence.*
    The Supreme Court will pass on the weight and effect of oral
    evidence on a motion for a new trial when the justice of the
    case, in its opinion, demands it, though there be other ground
    of reversal.  (p. 318).

Error to Circuit Court, Pocahontas County.

Action by Preston S. Clark against Emma C. Beard.  Judg-
ment for plaintiff, and defendant brings error,

*Reversed and Remanded.*

*R. S. Turk,* and *F. R. Hill,* for plaintiff in error.

*L. M. McClintic* and *Price, Osenton & McPeck,* for defendant
in error.

BRANNON, JUDGE:

A motion was made to reject the evidence because the bill
of exceptions does not identify it; but there is the evidence
found in the bill.    It is certified by the stenographer as the
evidence in the case, giving names of witnesses, and the order
of the judge showing his execution of the bill naming and
identifying the witnesses, and saying that the evidence is duly
certified by the stenographer.    It is also said there was no ex-
ceptions to the decision of the judge overruling the motion
for a new trial; but the bill of exceptions say there was.

This is an action of ejectment by Preston S. Clark against Emma C. Beard involving the ownership of coal. The nature of the case will be found in a former decision in the case in 59 W. Va. 669. When the case went back from this court to the circuit court a second trial resulted in a verdict and judgment of recovery by the plaintiff. As was settled in the case by our former decision Preston S. Clark owned the surface of certain lands and half of the coal in those lands, and Sherman Clark owned the other half of the coal in those lands, and Emma C. Beard was owner of this half of the coal by devise from her father Sherman Clark. Thus, Preston S. Clark and Sherman Clark were joint tenants in the undivided coal. This is clear. from the record and undisputed. Preston Clark admits this. He does not show the scratch of a pen of paper title to this coal, but he claims that he ousted his brother Sherman and acquired title to the coal under the statute of limitations. He says himself as a witness that that is his only title. On what does this claim rest? Some thirty years before the trial Preston Clark opened a coal mine on his land. A little coal was taken from it and the mine was not fit for use because it "dipped" and filled with water. Then he opened a second mine and from it some coal was taken. Not a large quantity. There was no coal mining in that country then. The land was in the wilds of Pocahontas county, far from a railroad. The coal not worth anything then. Preston used coal in his house; but Sherman living distant, did not. Here is one brother taking a little coal from time to time, occasionally, intermittently, for mere home and neighborhood use. No mining operations of any extent. No mining business carried on. The coal belonged to two brothers, the surface to Preston. Preston takes a little coal for his own use and that of neighbors. One brother digging on his own land and taking some coal from the common property. How can it be said that this constitutes an ouster of the other brother? Sherman would not deny his brother the privilege of coal of so little value. Preston paid the tax on the land and his brother would not perhaps for that reason protest against his use of a little coal. And then Preston owned the surface. Is this hostile possession? The law is old that, "It is the *intention* of the tenant or parcener in possession to hold the common property

in severalty and exclusively as his own, with notice or knowledge to his co-tenant of such intention, that constitutes disseisin," as we said in *Reed* v. *Bachman,* 61 W. Va. 452, citing *Cooey* v. *Porter,* 22 *Id.* 120. There is no show of intention of Preston to claim adversely until very lately, since his brother's death. As a witness he says he had no thought of adverse claim until he wanted to sell. The books say that when possession is taken there must be then intent to claim adversely. *Hudson* v. *Putney,* 14 W. Va. 561. Probably he never thought of such claim to his brother's coal until after his death, which was in 1901, and the suit was brought in 1904. As he claimed to have had possession for twenty years before that why did he not sue his brother? Why did he wait until he was dead and then sue his daughter? A court should be very rigid about defeating a clear title between cotenants on the ground of limitation. Such claim does not address itself with strong favor to a court of justice. Preston Clark does not show a jot or tittle of claim, except this unfounded claim of adverse possession. Could Sherman Clark infer an *intention* on his brother's part to claim adversely from his taking a little coal from under the surface of his own land? Plainly not. The act did not import such intention. Therefore, the plaintiff's case lacks the essential element demanded by all authorities, intention to claim as an enemy of his brother. But not only must there be such intention, but notice of such hostile intention must be brought home to Sherman Clark. *Justice* v. *Lawson,* 46 W. Va. 163. There must be what is considered in law an ouster, an intention to oust and deprive the true owner, evidenced by acts importing only hostility, acts under circumstances importing hostility. And such acts and intent to claim adversely must be brought home to the knowledge and notice of the owner. We said in the former decision of this case what seems to have been ignored in the trial, that "the statute of limitations does not begin to run in favor of one cotenant of land in possession, against another cotenant thereof until actual ouster by the former or some other act or acts on his part amounting to a total denial of the right of the latter, and until notice or knowledge of the act or acts relied on as an ouster is brought home to him; and that the notice or knowledge required must be either actual, or the act relied on as an ouster must be of such an open and

notorious character as to be notice of themselves, or reasonably sufficient to put the disseized cotenant on inquiry which if diligently pursued, will lead to notice or knowledge in fact." Preston Clark on the witness stand does not pretend to say that he ever let his brother know that he was his enemy. He would have been incompetent to do so; but he gives some evidence in the case which is incompetent; but he omits to say that he served such notice on his brother and he does not prove it. And is it possible to say that this digging of a little coal for home use, not in a big development, coal almost worthless, dug from under the surface of his own land, who with his brother owned the coal, would be notice of adverse possession? It is unreasonable. Is only the taking of rents and profits by one cotenant for his exclusive use evidence of his adverse possession? It would not be between strangers, especially not between brothers. It would give a right to demand compensation from one cotenant taking more than his share of the rents and profits, but would not be adverse possession. It is shown in this case by a little evidence that Sherman Clark passed by the premises some times and may have seen the little coal bank open. But would that tell him of hostile claim? Would he have to go to Preston and inquire whether it was an act of hostility? Would he not think that his brother was taking the little privilege in friendship and brotherhood? Courts and juries must view men's acts and intentions according to the instincts of human nature and social conduct. "Actual ouster of one cotenant in common cannot be presumed except where the possession has become tortious and wrongful by the disloyal acts of the cotenant which must be open, continuous and notorious so as to preclude all doubt of the character of his holding or the want of knowledge thereof by his cotenant. This conduct must amount to a clear, positive and continued disclaimer, and disavowal of his cotenant's title, and an assertion of an adverse right, and a knowledge of this must be brought home to his cotenant," we said in *Reed* v. *Bachman,* 61 W. Va. 456, quoting from *Boggess* v. *Meredith,* 16 W. Va. 1. We said so in this very case. We said also in the *Reed case* that, "Mere silent possession ever so long by one taking rents and profits without notice or knowledge of such adverse claim on the part of the other will not be adverse possession under the

statute." There is not a bit of evidence in this case to prove ouster but the digging of a little coal irregularly, only on occasions, broken use, having no continuity, hardly any notoriety. Thus 'we hold that the evidence in this case is wanting to show (1) Intent of Preston Clark to claim against his brother adversely. (2) Want of such acts as manifested ouster under the circumstances in this case. (3) Want of notice to Sherman Clark of hostile intent and purpose, and (4) Want of continuity of such use as I have spoken of.

Therefore, a new trial should have been granted, not exactly on the theory that it was contrary to the evidence, but without evidence to support it. That the verdict is without evidence to support it is another ground for a new trial. This occurs where there has been no proof whatever of material facts or facts in issue, or where the evidence is plainly insufficient to warrant the verdict. See the volume of cases cited for this proposition in 10 Encyclopedic Digest of Va. and W. Va. Reports, 453, 454. I say that this verdict is also contrary to law. Why? Because there are certain essential points that the plaintiff must prove and his evidence does not do so. The verdict is contrary to the law of disseisin and adverse possession between cotenants. Same authority, page 454; *Ritz* v. *City,* 45 W. Va. 262; *Manss-Bruning Shoe Co.* v. *Prince,* 51 *Id.* 510. This Court is unanimous in the opinion that if there had been a demurrer to evidence this Court would render a judgment for the defendant, for the coal claimed by her in her disclaimer, except the one-eighth of coal in 1355 acres mentioned in her disclaimer, she not having given any evidence on the trial as to that eighth. I would myself not hesitate to do so as it is, for reasons which I state in *Hoylman* v. *Roalroad,* 65 W. Va. 264.

As we remand the case we may advert to some other matters in the record. It is said there was no issue and this is relied upon as ground for a reversal. It is hardly worth while to mention this, because I find two entries of the plea of not guilty. Or do counsel mean that there is no *similiter?* That is dispensed with by Code 1906, ch. 134, § 3.

It is assigned as error that the court admitted for the plaintiff evidence that Preston S. Clark posted at the coal bank a notice warning persons against entering the coal entry. This

would seem to be admissible as a circumstance to show claim; but Preston Clark on the stand says it was only intended to warn off persons stealing coal. Therefore it did not evince claim against his brother. But we would not reverse for its admission. It played no part in the case, or ought not to do so.

A lease was introduced by which Clark leased to Walton the coal bank. We do not think it was error to admit this as an item under the claim of adverse possession, though standing alone it would have little effect, as it would not bring home notice of ouster. Evidence not contradicted shows that Sherman Clark also gave people leave to take coal.

There was admitted a paper reading: "This receipt is to show I have no interest in the 350 acres that Preston sold to Cherry River Company. This the 20 day of January, 1900. S. H. Clark." I do not see that this bears on the question of adverse claim. Its only tendency is to show a disclaimer of title. But this rude instrument cannot confer title of its own force. As it seems Clark places great reliance on this paper, it may be well to discuss it. It is a parol disclaimer, not a sealed instrument. It is not a deed. It has no parties, no consideration. The legal title to land was in Sherman Clark, for coal in place is part of the land, and when legal title is vested a parol disclaimer cannot be devested except by deed or record. Our statute of frauds requires a deed. Such is the doctrine stated in our former decision in this case. See *Wade* v. *McDougle,* 59 W. Va. 114; cases cited in *High* v *Pancake,* 42 W. Va. 607; Minor's Law Real Prop. § 1248. I need cite no authority to prove that an agreed destruction of a deed does not destroy the estate in its grantee. It was error to admit this paper, and this would reverse the case. We have sometimes said that where there is other ground for reversal we will not pass on evidence. That depends on the evidence. If there is apparent probability of the case being· bettered, perhaps that practice may in some cases be proper; but that is a matter of discretion. We can pass on the evidence if we choose. When we reflect, we may have gone too far in so saying. The party makes a motion for a new trial. The circuit court is bound to pass on it. Why is not this Court likewise bound to do so? If there should be a new trial what we say of the evidence can-

not be read to the jury. It would be for the court. This course tends to end litigation. Why refrain from giving an opinion on the evidence when we are satisfied that the case cannot be materially changed on retrial?

It is pointed out that the motion for a new trial does not specify grounds. That does not matter, if the court deems it proper to look through the record for them. It need not do so in voluminous evidence, without specification; but it may do so.

Judgment reversed, verdict set aside, and case remanded.

*Reversed and Remanded.*